UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MANN DWAYNE DAVIS,

                    Plaintiff,                              Case No. 2:22-cv-48

v.                                                          Honorable Maarten Vermaat

YVONNE WHITNEY et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 3.) Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.8.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform

Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§ 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to

the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134

(6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the

complaint on the named defendants is of particular significance in defining a putative defendant's

relationship to the proceedings. "An individual or entity named as a defendant is not obliged to

engage in litigation unless notified of the action, and brought under a court's authority, by formal

process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of

process, under longstanding tradition in our system of justice, is fundamental to any procedural

imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Huss, Erickson, Pelky, and Bailey-Webb. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's official capacity, due process, and equal protection claims against Defendants Whitney and Moncalieri.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officers Yvonne

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Whitney and Unknown Moncalieri in their official and personal capacities. Plaintiff also sues Warden Erica Huss, Resident Unit Manager P. Erickson, Assistant Deputy Warden Unknown Pelky, and Licensed Master Social Worker Unknown Bailey-Webb in their official capacities.

Plaintiff alleges that between April and September of 2021, Defendant Whitney sexually abused him by escorting him to the supply closet and closing the door on the two of them. Once inside, Defendant Whitney would have Plaintiff perform sexual acts on either himself or on her. Plaintiff states that he did not report the sexual abuse until September 7, 2021, because he was afraid of reprisals. However, on September 7, 2021, Plaintiff filed a PREA complaint against Defendant Whitney. According to Plaintiff, his complaint was grossly mishandled and wrongly dismissed, which is evident from the fact that the investigation report was only a line or two.

Plaintiff states that after filing his PREA complaint, Defendants Whitney and Moncalieri began retaliating against him by falsifying two serious misconduct tickets each between September and October 2, 2021, causing Plaintiff to be sent to segregation. Plaintiff asserts that prior to these misconduct tickets, he had been misconduct free for fifteen months. Plaintiff alleges that he kited Defendants Huss, Erickson, and Pelky asking to be moved to a unit where he would not be around Defendant Whitney. Plaintiff states that these Defendants left him in the same unit and allowed Defendant Whitney to continue working there. Plaintiff wrote a grievance regarding the retaliatory conduct of MBP staff, to no avail.

Plaintiff claims that Defendants Huss, Pelky, Erickson, and Bailey-Webb punished Plaintiff for being severely mentally ill by keeping him in temporary segregation for longer than seven days in violation of MDOC policy. Plaintiff states that as of the date he signed his complaint, he had been in segregation for 120 days, during which a number of other inmates had been released from segregation despite the fact that they committed more serious offenses.

Plaintiff states that he is severely depressed, suffers from panic attacks, only sleeps two to three hours a week, and takes six antidepressants a day to manage his symptoms. Plaintiff states that his therapist indicated that placement in segregation would adversely impact his mental state, but that his kites to medical providers and to Defendants Erickson, and Pelky describing his mental distress have been ignored.

Plaintiff asserts violations of the First, Eighth, and Fourteenth Amendments. Plaintiff seeks damages, and he also asks the Court to issue "personal protection orders" (PPO) against Defendants. (Compl., ECF No. 1, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity

As noted above, Plaintiff sues Defendants Whitney and Erickson in both their individual and official capacities, and Defendants Huss, Erickson, Pelky, and Bailey-Webb in their official capacities only. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks both monetary damages and injunctive relief in the form of a PPO against the named Defendants. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against the named Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

**B.    Personal Protection Orders**

Although it is possible for a prisoner to seek prospective injunctive relief against a named individual defendant in that defendant's official capacity despite sovereign immunity, it is not possible for this Court to issue a personal protection order. Personal protection orders are a creation of state law. *See* Mich. Comp. Laws § 600.2950 *et seq.* This Court does not have jurisdiction to decide personal protection order disputes under the statute. *Simmons v. Simmons*, No. 1:19-cv-189, 2019 WL 5622442 (W.D. Mich. Apr. 12, 2019) *report and recommendation adopted*, 2019 WL 5622418 (W.D. Mich. Jul. 19, 2019); *see also Jackson v. United States*, No. 1:16-cv-20347, 2018 WL 3284444, at *2 (E.D. Mich. Mar. 14, 2018) ("PPOs are within the exclusive jurisdiction of the

state court . . . ."), *report and recommendation adopted* 2018 WL 2093947 (E.D. Mich. May 7,

2018) *certificate of appealability denied* 2018 WL 11303587 (6th Cir. Aug. 27, 2018) *cert. denied*

139 S. Ct. 1545 (2019). The Court therefore will dismiss Plaintiff's request for personal protection

orders without prejudice to Plaintiff's pursuit of such a claim in state court.

    **C.**    **Eighth Amendment**

    Plaintiff claims that Defendants violated his Eighth Amendment rights by subjecting him

to sexual abuse, failing to take action to protect him, and by keeping him in segregation. The Eighth

Amendment imposes a constitutional limitation on the power of the states to punish those

convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's

"evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting

*Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal

civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations

are required to make out a conditions-of-confinement claim." *Id.*

    In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he

faced a sufficiently serious risk to his health or safety and that the defendant official acted with

"'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Defendant Whitney

Plaintiff claims that between April and September of 2021, Defendant Whitney sexually abused him by escorting him to the supply closet and ordering him to perform sexual acts on either himself or on her. In *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087 (2019), the Sixth Circuit noted that federal courts have long held that whether it is perpetrated by other inmates or by prison employees, sexual abuse is sufficiently serious to violate the Eighth Amendment. *Id.* at 1095. In finding that Defendant Corrections Officer Drennan violated the Eighth Amendment rights of Sherman, the prisoner-plaintiff, the Sixth Circuit stated:

> This Court held nearly three decades ago that sexual abuse of inmates can violate the Eighth Amendment even in the absence of physical touching by a corrections officer. *See Kent*, 821 F.2d at 1228 (unobstructed views of inmates showering).

Other courts of appeals have reached the same conclusion. *See e.g.*, *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (homophobic epithets); *DeTella*, 319 F.3d at 939 (ribald comments); *Daskalea*, 227 F.3d at 439–41 (forced striptease). Furthermore, the abuse alleged to have occurred in this case did not merely consist of words. It also entailed forced sexual acts. The fact that Drennen effectuated this sexual abuse by ordering Sherman to expose her breasts and masturbate, rather than by touching Sherman himself, does not change the fact that Sherman was repeatedly required to engage in sexual acts against her will.

*Id.* at 1096.

The Court notes that Plaintiff alleges similar conduct on the part of Defendant Whitney. As noted above, Plaintiff contends that Defendant Whitney forced him to perform sexual acts on both himself and her on multiple occasions over a five-month period. The Court concludes that such allegations are sufficiently serious to state an Eighth Amendment claim against Defendant Whitney.

## 2. Defendants Huss, Erickson, Pelky, and Bailey-Webb

### a. failure to separate Plaintiff from Whitney

Plaintiff asserts that Defendants Huss, Erickson, and Pelky refused to grant his request to be moved to a unit away from Defendant Whitney. As noted above, deliberate indifference to Plaintiff's health or safety might suffice to state a claim for violation of the Eighth Amendment. In this case, Plaintiff concedes that his PREA grievance was investigated and denied. Although Plaintiff states that the investigation of his grievance was a sham, he fails to allege any facts showing that Defendants Huss, Erickson, and Pelky were aware of any problems with the investigation. Plaintiff's complaint does no more than allege that Defendants Huss, Erickson, and Pelky refused to separate Plaintiff from Defendant Whitney after his PREA complaint was found to lack merit. Because these allegations do not support a finding of deliberate indifference, Plaintiff's Eighth Amendment claims based on the failure to separate him from Defendant Whitney are properly dismissed for lack of merit.

10

   **b.**  **retaining Plaintiff in temporary segregation for more than 7 days**

Plaintiff contends further that Defendants Huss, Pelky, Erickson, and Bailey-Webb kept him in temporary segregation for longer than seven days in violation of MDOC policy in order to punish Plaintiff for being seriously mentally ill. The fact that Plaintiff's stay extended beyond seven days even in the absence of an exception permitted under MDOC policy does not, standing alone, demonstrate a constitutional violation. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Nonetheless, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs, including psychological needs, of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

But Plaintiff's claims against Defendants Huss, Pelky, Erickson, and Bailey-Webb alleging that the conditions and restrictions imposed upon him as a segregated prisoner have caused him mental distress in violation of his Eighth Amendment rights also fail. The Eighth Amendment prohibits punishments that are physically barbaric and also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102–03 (internal quotations omitted). To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his administrative segregation, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Moreover, although Plaintiff claims that his mental illness is exacerbated by placement in segregation, he fails to allege specific facts describing the nature of his mental illness, whether he had a history of self-harm, or demonstrating that Defendants Huss, Pelky, Erickson, and Bailey-

Webb knew that Plaintiff was at a substantial risk of serious harm and consciously disregarded that risk.

Plaintiff attaches a copy of the response to his step I grievance regarding placement in temporary segregation to his complaint. (ECF No. 1-1, PageID.20.) In his grievance, Plaintiff asserted that his placement in segregation was improper due to his "MMD" status.[2]

Plaintiff states that he wanted to opt out of the START now programming and be released to the general population. (*Id.*) According to the investigation summary, Plaintiff was active in the START now program at MBP until he received two threatening behavior misconducts on September 27, 2021, and October 2, 2021. At that point, Plaintiff was placed in temporary segregation pending his hearings. On October 11, 2021, Plaintiff was classified back to the START program by Defendants Pelky, Erickson, and Bailey-Webb. (*Id.*) The grievance response noted that according to the START manual, whenever the Security Classification Committee recommends classification to administrative segregation, the Warden shall determine if placement in a START Unit would be more appropriate and, if so, or if the prisoner is diagnosed with a serious mental illness, the Warden shall request that the prisoner be placed in a START Unit. (*Id.*) Finally, the grievance response concluded that based upon Plaintiff's recent behaviors, the direction of Policy Directive 04.06.182, the START unit manual, and the continued monitoring of

---

[2] "MMD" is often used as an abbreviation for "major mental disorder." *See, e.g.*, *Carter v. Ayala*, No. 1:13-cv-807, 2017 WL 9480152, at *1, 8 (W.D. Mich. Mar. 8, 2017) *report and recommendation adopted* 2017 WL 1173475 (W.D. Mich. Mar. 30, 2017) *affirmed* No. 17-1506, 2018 WL 2086044 (6th Cir. Jan. 3, 2018). That designation may have been of some significance for placement in programs that were alternatives to segregation or for determining a level of mental health care while a prisoner was in segregation. *Id.*  The designations of greater significance now are "mental disability," MDOC Policy Directive 04.06.072 (eff. Dec. 29, 2010), and "serious mental illness," MDOC Director's Office Memorandum 2022-12 (eff. Jan. 1, 2022).

MBP's QMPH (qualified mental health professional) team, Plaintiff was properly placed in temporary segregation awaiting placement back into the START program. (*Id.*)

A review of Plaintiff's complaint, as well as the attachments thereto, reveal that Plaintiff has failed to allege sufficient facts to support his claim that his placement in temporary segregation violated the Eighth Amendment. Therefore, Plaintiff's Eighth Amendment claims against Defendants Huss, Pelky, Erickson, and Bailey-Webb are properly dismissed.

### D.    Due Process

Plaintiff claims that Defendants Whitney and Moncalieri falsified serious misconduct tickets on him and that Defendants Huss, Pelky, Erickson, and Bailey-Webb kept him in temporary segregation for an excessive period of time. According to the attachments to Plaintiff's complaint, he received threatening behavior misconducts on September 27, 2021, and October 2, 2021. (ECF No. 1-1.) A charge of threatening behavior is a class I misconduct. To the extent that Plaintiff asserts that his class I misconduct convictions violated his right to due process, his claim lacks merit.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*,

427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff notes that he was placed in segregation for 120 days. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus,

15

it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff contends that as of the filing of his complaint, he had been in segregation for 120 days. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must determine

if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Plaintiff fails to make any factual allegations to support a finding that conditions are so extreme as to constitute an "atypical and significant" hardship. Moreover, as noted above, Plaintiff's placement in segregation was temporary pending his placement in a START unit because of his mental illness. The only other allegation he presents regarding his segregation is that its duration has been for more than 120 days. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Because Plaintiff has failed to make any allegations showing that his segregation is "atypical and significant," the Court concludes that no liberty interest is implicated by his placement.

### E.     Equal Protection

Plaintiff states that as of the date he signed his complaint, he had been in segregation for 120 days, during which a number of other inmates have been released from segregation despite the fact that they committed more serious offenses. Plaintiff's allegations implicate the Equal Protection Clause of the Fourteenth Amendment which provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV; *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The clause is essentially a direction that all persons similarly situated should be treated alike.

Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff, however, fails to allege any facts suggesting that he was treated differently from inmates who were similarly situated in all relevant respects.

Plaintiff's allegations of "unfair treatment" are simply too conclusory and do not suffice to allege an equal protection violation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

As noted above, Plaintiff claims that other prisoners were released from segregation while he remained in segregation, despite having committed—at least in his mind—lesser infractions. However, it is apparent from the attachments to Plaintiff's complaint that he was being held in segregation, not as punishment for major misconducts, but pending his acceptance back into the START unit program because of his "MMD." Plaintiff does not allege any facts indicating whether the prisoners who were released from segregation while he was so confined were similarly situated in that respect. Therefore, because Plaintiff has failed to allege that he was treated differently from

others who were similarly situated in all relevant respects, his equal protection claims are properly dismissed.

### F.    Retaliation

Plaintiff claims that Defendants' conduct was motivated by the desire to retaliate against him for filing a PREA complaint. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court assumes without deciding that Plaintiff's PREA grievance constitutes protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

Plaintiff claims that he received major misconduct tickets and was kept in segregation for a period of 120 days. Therefore, Plaintiff has met the second element of a retaliation claim.

Plaintiff claims that his receipt of misconduct tickets from Defendants Whitney and Moncalieri occurred shortly after he filed his PREA grievance against Defendant Whitney. Plaintiff also states that prior to receiving the two tickets, he had been misconduct free for fifteen months. Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . . *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010). The Court concludes that the facts alleged by Plaintiff in his complaint permit the inference that Defendants Whitney and Moncalieri were motivated to write misconducts against Plaintiff by Plaintiff's protected conduct. Accordingly, Plaintiff has adequately alleged a First Amendment retaliation claim against them.

With regard to Defendants Huss, Pelky, Erickson, and Bailey-Webb, Plaintiff claims that they kept him in segregation in order to retaliate against him for filing the PREA grievance. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct

evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation with regard to Defendants Huss, Pelky, Erickson, and Bailey-Webb. He has not presented any facts to support the inference that these Defendants retaliated against him because he filed a PREA grievance against Defendant Whitney. The temporal proximity that minimally supports the inference of retaliation for Plaintiff's claims against Defendants Whitney and Moncalieri is simply not present with respect to the other Defendants. Accordingly, his speculative allegation fails to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Huss, Pelky, Erickson, and Bailey-Webb will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's official capacity, due process, and equal protection claims against Defendants Whitney and Moncalieri. Plaintiff's Eighth Amendment claim against Defendant Whitney and his retaliation claims against Defendants Whitney and Moncalieri remain in the case.

An order consistent with this opinion will be entered.


Dated:      July 22, 2022                          /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge

22